UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER SANGALANG, ALFREDO FLORES, DEANDRE PATTON, ROD JONES, ROBERT WILLIAMS, DEREK JONES,<br><br>Defendants. | 2:08-CR-163 JCM (GWF)<br><br><br><br>ORDER |

Presently before the court is defendants' motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 and *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. #620). The government has filed an opposition (doc. #632) to which the defendants have replied (doc. #642). Both the government (doc. #48) and defense (doc. #643) have also filed supplements.

This matter originally came on for oral argument on April 17, 2012. After hearing presentations of counsel, the court continued the hearing until April 24, 2012. After extended review and deliberation, the court vacated the April 24, 2012, hearing. The instant order denying the motion now follows.

**I.    Background**

   *A.    The Investigation*

This case revolves around an ATF sting operation known as Sin City, which was operated by undercover ATF officers out of a tattoo shop known as Hustlers. The shop was outfitted with video cameras and audio recorders to capture all the planning and discussions of the defendants and the

**James C. Mahan**
**U.S. District Judge**

1  ATF undercover agents.

2  The officers purchased illegal firearms and drugs from the defendants, and the culmination of
3  the operation was to be a forced entry into a drug house and the related money depository house, the
4  murder of the occupants, and the theft of the drugs and money found in the two houses.  Following
5  a two-week trial, the jury convicted the defendants of three counts of gun and drug violations.

6  At trial the defendants claimed that Sin City was a corrupt operation by a governmental agency
7  run amok.  The ATF officers supposedly were using drugs.  These drugs, however, turned out to be
8  Wizard Weed, a substance that agents use, which once lighted, gives off the aroma of marijuana.

9  The ATF utilized a confidential informant in the operation, Richard "Bones" Beckworth, and
10 he became the center of the defense's attack.  Supposedly Bones had purchased guns himself or
11 through straw buyers, sawed off the barrels and obliterated the serial numbers (which made them
12 illegal), and then sold them through the defendants or others to the ATF.

13 Allegedly, Bones had also purchased drugs, diluted them with rock salt, and then sold the drugs
14 to the ATF agents through the defendants or others.  Furthermore, he had used drugs himself, a
15 violation of his agreement with the ATF.  Nevertheless, the agency kept him on the job with only
16 a verbal reprimand.

17 In essence, the defendants argue that Bones entrapped the defendants by furnishing the means
18 and method of committing crimes that the defendants would not otherwise have committed.

19  *B.*     *The Trial*

20 Bones did not testify for the government at the trial.  The defendants did call him in their case
21 in chief, and although he did admit using drugs and being reprimanded, he denied the other
22 allegations about his supposed misdeeds.

23 Deandre Patton, one of the defendants, and  a woman named Ashley Gonzales did testify to
24 the same effect:  that Bones was a mastermind who did alter the firearms and dilute the drugs and
25 then have others sell them to the ATF.  Both testified that they saw Bones in action, and Ms.
26 Gonzales admitted that she purchased a firearm from a sporting goods store at Bones' direction so
27 that he could alter it.

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

The trial lasted approximately two weeks and also included hours of audio and video recordings as well as the testimony of the government agents who participated in the sting operation. In their questioning as well as their closing arguments, the defendants claimed that Sin City was a tainted sting operation and that the government agents and their confidential informant, Bones, had entrapped the defendants.

Considering all the evidence adduced by the parties, the jury rejected the arguments of the defendants and found them guilty of all three counts with which they were charged. In speaking with the jury after the verdict, the court learned that the jury did not believe Bones to be a credible witness, and the court agrees with their assessment.

## II.  Motion for a New Trial

In their current motion, the defendants seek a new trial based on newly discovered evidence. This evidence consists of representations from defense attorneys in Dallas and Lubbock, Texas, that their clients were involved in ATF sting operations in those cities, wherein the ATF used Bones as a confidential informant. The defendants from Dallas and Lubbock, each of whom pled guilty, would supposedly testify that Bones committed the same machinations as the defense argued he had committed in this case. The defendants claim a *Brady* violation that the government did not disclose these Texas allegations in the present case and alternatively seek a new trial pursuant to Fed. R. Crim. P. 33.

The court does not find that the Texas information rises to the level of *Brady* material that should have been disclosed. Furthermore, the information from Texas is cumulative to the testimony and evidence in this case that Bones was an out of control informant. More witnesses who would testify to the same effect as those who already testified is not new evidence. The weight of evidence does not depend on the number of witnesses. One witness, worthy of belief, is sufficient to sustain the verdict. The jury in this case already heard the evidence and rendered its verdict.

*A.*   *Legal Standard*

1.   Brady Violations

The government has an obligation to provide to the defense all exculpatory or impeachment

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  evidence within its possession. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Withholding such
2  evidence constitutes a violation of a defendant's right to due process. *Id.* A court will order a new
3  trial where (1) the evidence at issue is favorable to the defense; (2) the government violated its duty
4  and suppressed the evidence; and (3) the government's violation prejudiced the defendant. *Strickler*
5  *v. Greene*, 527 U.S. 263, 281-82 (1999).

6  The evidence at issue here consists of alleged testimony from defendants convicted
7  in other districts in investigations that also used Bones as a confidential informant. These
8  individuals, it is represented, will testify that Bones also entrapped them by arranging the gun
9  and drug sales. Each of these proffered witnesses pled guilty in their respective case. The
10 court finds that the testimony of these witnesses does not rise to *Brady* material.

11 First, the proffered testimony does not sufficiently speak to the elements of an
12 entrapment defense. The court's jury instruction regarding entrapment stated that the jury
13 was required to find that (1) the defendants were predisposed to commit the crimes alleged
14 and (2) that the government did not induce the criminal act. Specifically, Jury Instruction
15 No. 19 stated:

> The government has the burden of proving beyond a reasonable doubt that each defendant was not entrapped. The government must prove the following:
>
> 1. the defendant was predisposed to commit the crime before being contacted by government agents, or
>
> 2. the defendant was not induced by the government agents to commit the crime.
>
> Where a person, independent of and before government contact, is predisposed to commit the crime, it is not entrapment if government agents merely provide an opportunity to commit the crime.

Doc. 492. The proffered testimony, however, only speaks to the second element. It does not negate the defendants' predisposition to commit the crimes alleged. The Ninth Circuit has held that evidence is immaterial under *Brady* if it addresses inducement, but fails to refute predisposition. *United States v. Ross*, 372 F.3d 1097, 1108-09 (2004).

**James C. Mahan**
**U.S. District Judge**

- 4 -

1  Furthermore, the court finds that the proffered testimony is cumulative. The testimony of
2  these proposed witnesses will mirror the same entrapment defense and testimony that the defendants
3  already presented to the jury.

4  2.  Fed. R. Crim. P. 33

5  Pursuant to Fed. R. Crim. P. 33 the court may vacate any judgment and grant a new
6  trial if the interest of justice so requires. Motions brought based on newly discovered
7  evidence must be filed within three years after the finding of guilt. *Id.*

8  Motions for new trial pursuant to Fed. R. Crim. P. 35 are improper where the evidence
9  proffered is "cumulative, impeachment-related, or both" unless "the testimony was
10  uncorroborated and provided the only evidence of an essential element of the government's
11  case." *United States v. Waggoner*, 339 F.3d 915, 919 (9th Cir. 2003); *United States v.
12  Marshall*, 56 F.3d 1210, 1212 (9th Cir. 1995) (quoting *United States v. Davis*, 960 F.2d 820,
13  825 (9th Cir. 1992)). Newly discovered impeachment evidence may be favorable and
14  material when "the reliability of the witness may be determinative of the defendant's guilt or
15  innocence." *United States v. Collins*, 551 F.3d 914, 924 (9th Cir. 2009) (quoting *United
16  States v. Bracy*, 67 F.3d 1421, 1428 (9th Cir. 1995)); *see also Hinkson*, 585 F.3d at 1266
17  ([T]he district court found the evidence served no purpose other than to impeach [the
18  witness], which doomed [defendant's] new trial motion under the fourth step of the
19  *Harrington* test").

20  In a similar case, the court in *United States v. Berry* denied a defendant's motion for
21  new trial after finding the newly discovered evidence was "no more than impeaching
22  evidence." The court explained that only in "limited" and "rare" cases "where the credibility
23  of a key government witness has been wholly discredited. . . ." should such a motion be
24  granted. 624 F.3d 1031, 1043 (9th Cir. 2010); *United States v. Krasney*, 607 F.2d 840 (9th
25  Cir. 1975); *see also Smith*, 132 S. Ct. at 629.

26  Here, the jury heard all the evidence and testimony from the parties in this case and rejected
27  the defendants' claim of entrapment and government misconduct. Moreover, the only witness that

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

1   this new evidence would impeach is Bones, who testified for the defense, not the government.

2   Furthermore, Patton and Gonzales testified that Bones masterminded the entire plot and was
3   the individual who obliterated serial numbers and directed their sale to ATF agents. The jury
4   rejected this testimony. The proffered new testimony is merely cumulative because it is substantially
5   similar to testimony that the jury already heard, and rejected.

### III.   Conclusion

In light of the foregoing, and this court's conclusion that a *Brady* violation did not occur and the supposed new evidence is merely cumulative evidence, the motion for a new trial (doc #620) is DENIED.

DATED May 3, 2012.

*James C. Mahan*
_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 6 -